# Master Procurement Agreement

between

ImagePoint, Inc.

and

JPMorgan Chase Bank, National Association

Contract ID No.____

Page 2

# MASTER PROCUREMENT AGREEMENT

This Master Procurement Agreement ("**Agreement**") is made as of **July __, 2005** ("**Agreement Effective Date**") and is entered into by JPMorgan Chase Bank, National Association, with an office located at 270 Park Avenue, New York, New York 10017-2070 and **ImagePoint, Inc.**, a **Tennessee** corporation having its place of business at **445 S. Gay Street, Knoxville, TN 37950**.

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree to the foregoing and as follows:

## ARTICLE 1
## AGREEMENT STRUCTURE

**Section 1.1**   **Overview; Schedules.**

This Agreement represents the terms and conditions pursuant to which **ImagePoint, Inc.** and its Affiliates (severally and collectively, "**Supplier**") shall provide Services (as defined in **Section 5.1**) or Products (as defined in **Section 6.1**) to JPMorgan Chase Bank, National Association and its Affiliates (severally and collectively, "**JPMC**"), pursuant to schedules ("**Schedules**") developed hereunder. Each of the Services, Products and any related deliverables (including, Work Product (as defined in **Section 7.1**) and Supplier Tools (as defined in **Section 7.5**)) may be referred to herein as a "**Deliverable**" and collectively, as the "**Deliverables**". Subject to **Section 1.4** hereof, each Schedule will be deemed to incorporate all of the terms and conditions of this Agreement.

**Section 1.2**   **Each Schedule Is a Separate Agreement.**

Each Schedule will be a separate agreement between Supplier and the JPMC entity that signs the Schedule. Each Schedule will reference this Agreement. The Schedules will describe the Deliverables that Supplier will provide, the prices that JPMC will pay and other transaction-specific terms (including such other commercial and legal terms and conditions relating to the Deliverables as the parties may agree). Only the JPMC entity that signs a Schedule will be liable for JPMC's obligations under that Schedule. The benefits of any Schedule extend to the JPMC entity that signs the Schedule and, to the extent specified in the applicable Schedule or otherwise requested by JPMC, to other JPMC entities, customers, employees, suppliers, business partners and divested companies (each a "**Recipient**" and collectively, the "**Recipients**"). No obligation to purchase any Deliverable(s) is created under or pursuant to this Agreement except through the execution of a Schedule.

**Section 1.3**   **Ordering of Deliverables.**

JPMC may order Deliverables from Supplier by issuing a written purchase order to Supplier. Each purchase order shall reference this Agreement; provided, that even if a purchase order fails to reference this Agreement it will still be subject to the terms and conditions hereof and those of a Schedule relating such Deliverables. The type of purchase order that JPMC sends to Supplier shall be in such form as JPMC wishes to use. Pre-printed terms and conditions contained in or on any purchase order form issued hereunder shall be of no force or effect.

**Section 1.4**   **Order of Precedence.**

If a term in a Schedule or purchase order conflicts with a term in this Agreement, the terms of this Agreement will prevail unless the Schedule or purchase order specifically states that the term in the Schedule

Contract ID No.____

or purchase order will prevail. If a term in a purchase order issued under a Schedule conflicts with a term in a Schedule, the terms of the Schedule will prevail. If terms in this Agreement conflict, the term most closely describing the type of transaction giving rise to the issue will prevail.

Section 1.5    Interpretation of Certain Terms.

The term "**Affiliate**" means an entity owned by, controlling, controlled by, or under common control with, directly or indirectly, a party. For this purpose, one entity "**controls**" another entity if it has the power to direct the management and policies of the other entity (for example, through the ownership of voting securities or other equity interest, representation on its board of directors or other governing body, or by contract). "**Including**" means including without limitation. The term "**days**" refers to calendar days. "**Business Day**" means Monday through Friday, excluding any official JPMC holidays.

## ARTICLE 2
## TERM AND TERMINATION

Section 2.1    Term.

This Agreement is effective from the Agreement Effective Date until the later of: (a) five (5) years from the Agreement Effective Date; or (b) the expiration or termination of the last surviving Schedule hereunder, unless earlier terminated in accordance with the terms of this Agreement ("**Term**"). Each Schedule shall state a term for that Schedule (the "**Schedule Term**").

Section 2.2    Termination for Cause.

Either party may terminate this Agreement or any Schedule(s), in whole or in part, as of the date specified in a notice of termination if the other party materially breaches its obligations under this Agreement or any Schedule and does not cure that breach within thirty (30) days after receiving the non-breaching party's notice. Without limiting the foregoing, repeated breaches by Supplier of its duties or obligations under a particular Schedule or Supplier's failure to achieve the service levels set forth under a particular Schedule (in either case, even if cured) may be deemed a material breach of this Agreement by JPMC.

Section 2.3    Termination for Convenience.

JPMC may terminate this Agreement or any Schedule(s) for convenience, in whole or in part, at any time and without liability by giving Supplier at least thirty (30) days prior written notice of the termination date.

Section 2.4    Termination for Financial Insecurity.

Either party may terminate this Agreement or any Schedule, in whole or in part, for cause as of the date specified in a termination notice if the other party: (a) files for bankruptcy; (b) becomes or is declared insolvent; (c) is the subject of any proceedings (not dismissed within thirty (30) days) related to its liquidation, insolvency or the appointment of a receiver or similar officer for that party; (d) makes an assignment for the benefit of all or substantially all of its creditors, (e) takes any corporate action for its winding-up, dissolution or administration; (f) enters into an agreement for the extension or other readjustment of substantially all of its obligations; or (g) recklessly or intentionally makes any material misstatement as to financial condition.

Contract ID No.____

Page 4

Section 2.5   Other Termination Rights.

In addition to the termination rights set forth in this **Article 2**, there may be additional termination rights set forth in the Schedule(s). The notice period for the exercise of any such additional termination rights will be as set forth in the applicable Schedule(s).

Section 2.6   Refunds; Post Termination Fees and Costs.

Upon termination, JPMC will receive a refund of all fees paid in advance for Deliverables not yet provided by Supplier. Supplier shall be paid fees and expenses that have accrued and which are due and owing with respect to the Deliverables up to the effective date of termination of this Agreement. In no event will Supplier's costs include, and Supplier acknowledges that JPMC will not reimburse, unabsorbed overhead or anticipated profits.

Section 2.7   Transition Services.

Upon a complete or partial termination for any reason or the earlier expiration of this Agreement or any Schedule(s), if requested by JPMC, Supplier will continue to provide the applicable Deliverables for the duration of the time period specified in the applicable Schedule (the "**Transition Period**"); provided, that if no duration is specified in a Schedule then the Transition Period shall be no less than one hundred and twenty calendar days (120) from the actual date of termination or expiration (as applicable). During the Transition Period, Supplier will continue to make available to JPMC all Deliverables (in accordance with the terms and conditions of this Agreement and the applicable Schedules) and will perform such other services as mutually agreed to by the parties (collectively, "**Transition Services**") as are necessary to enable JPMC to obtain from another service provider, or provide for itself, services to substitute for or replace the applicable Deliverables provided by Supplier under the applicable Schedule(s). Supplier will cooperate in good faith with JPMC and any new service provider selected by JPMC in the performance of its obligations under this **Section 2.7** and Supplier further agrees to work with JPMC and any new service provider in the development and carrying out of a transition plan as part of the Transition Services. If this Agreement or an applicable Schedule(s) is terminated: (a) due to the occurrence of an uncured material breach by Supplier, the Transition Services will be provided to JPMC at no charge; or (b) due to the occurrence of: (i) an uncured material breach by JPMC; (ii) the expiration of this Agreement or a Schedule(s); or (iii) a termination without cause by JPMC, the Transition Services described will be provided at Supplier's then-current rates or such other rates as mutually agreed to by the parties for such services. For clarity, Supplier's performance of the Services described in the Schedules during the Transition Period will be performed at the rates set forth in the applicable Schedule(s).

Section 2.8   Survival.

After this Agreement or any Schedule terminates, the terms of this Agreement and Schedule that expressly or by their nature contemplate performance after termination or expiration will survive and continue in full force and effect. For example, the provisions protecting Confidential Information, Personal Information, privacy, permitting audits, providing for rights of quiet enjoyment, intellectual property rights and granting perpetual licenses, requiring indemnification and setting forth limitations of liability each, by their nature, contemplate performance or observance after such expiration or termination shall survive such expiration or termination.

Contract ID No._____

Page 5

# ARTICLE 3
# COMMUNICATIONS

Section 3.1    Relationship Managers.

Each party will name one of its employees as the primary liaison with the other party for each Schedule (each, a "**Relationship Manager**"). The Relationship Managers will serve as the parties' points of contact and, to the extent requested by JPMC, will communicate on a frequent (not less than calendar quarterly) basis to review Supplier's performance hereunder and to address any related concerns and questions of JPMC.

Section 3.2    Notices.

All notices must be in writing and will be deemed given only when sent by first class mail (return receipt requested), hand-delivered or sent by documented overnight delivery service to the party to whom the notice is directed, at its address indicated below or in the applicable Schedule. In addition, where this Agreement states that notice will be given "immediately" after an event occurs, the notifying party will also send an immediate e-mail message to the other party's Relationship Manager. Notices to be given "promptly" will be given, in any event, within five (5) days. A party may change its address for notices by sending a change of address notice using this notice procedure. Supplier will send a copy of each notice required hereunder to JPMC to:

If to JPMC:

    JPMorgan Chase Bank, N.A.
    General Services, Contracts
    Attn: Contracts Manager
    P.O. Box 710638
    Columbus, OH 43271-0638
    Reference: JPMC Contract ID # _____
    Fax: (614) 213-9455

With a copy to:

    JPMorgan Chase Bank, N.A.
    Legal Department
    One Chase Manhattan Plaza, 25th Floor
    New York, NY 10081
    Attention: Workflow Manager
    Reference: JPMC Contract ID # _____
    Fax: (212) 383-0800

If to Supplier:

    ImagePoint, Inc.
    P.O. Box 59043
    445 S. Gay Street
    Knoxville, TN 37950-9043
    Attention: Mark J. Deuschle
    Tel. (800) 444-7446 ext. 553
    Fax: (865) 342-0525