IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

IMAGEPOINT, INC., and
IMAGEPOINT, INC., by
JAMES R. MARTIN, Secured Creditor,

      Plaintiffs,

v.   Case No.1:12-CV07183-LAK-GWG

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION,

      Defendant.

## SECOND AMENDED COMPLAINT

Plaintiffs ImagePoint, Inc. ("ImagePoint"), and ImagePoint by James R. Martin, Secured Creditor, (collectively, "Plaintiffs"), allege as follows:

1.    This Court has subject matter jurisdiction based up diversity of citizenship, 28 U.S.C. § 1332. ImagePoint, Inc. and James R. Martin are both resident citizens of the State of Tennessee. Defendant JPMorgan Chase Bank, National Association ("JP Morgan Chase") is a resident citizen of the State of New York. The amount in controversy exceeds $75,000, exclusive of interests and costs.

2.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because JP Morgan Chase resides in this District. Moreover, the contract sued upon in this action contains a forum selection clause for this District. This Court has personal jurisdiction over JP Morgan Chase both because JP Morgan Chase engages in substantial business in this District and has its headquarters located in this District. Also, JP Morgan Chase insisted in the contract sued upon that any action based on that contract be brought in this District.

3. ImagePoint and JP Morgan Chase entered into a contract, attached hereto as Exhibit 1 (the "Procurement Agreement"), where ImagePoint agreed to perform services and provide materials to JP Morgan Chase.

4. ImagePoint performed its duties under the Procurement Agreement, with the services and materials totaling $802,082.74. The detail of the sales by ImagePoint to JP Morgan Chase is attached hereto as Exhibit 2.

5. JP Morgan Chase has not paid ImagePoint the amounts due for said products and services, except for a deposit in the amount of $39,794.82.

6. After all credits are applied, JP Morgan Chase owes ImagePoint $762,287.92 plus interest and attorneys' fees under the Procurement Agreement.

7. Plaintiffs have made demands on JP Morgan Chase for payment of the amounts which JP Morgan Chase owes ImagePoint. JP Morgan Chase has failed to pay the amounts which are owed to Plaintiffs.

8. On October 3, 2003, ImagePoint and Wachovia entered into a Loan and Security Agreement (the "Loan and Security Agreement"), attached hereto as Exhibit 3, where Wachovia agreed to make certain loans to ImagePoint. As Security Interest, ImagePoint assigned to Wachovia all of the Collateral[1], including all Accounts[2]. Accounts include all accounts

---

[1] Section 1.1 of the Loan and Security Agreement defines "Collateral" as "all of Borrower's right, title and interest in and to each of the following (whether in the name of Borrower or under any of Borrower's Trade Names), wherever located and whether now or hereafter existing or now owned or hereafter acquired or arising:…(a) all Accounts."

[2] Section 1.1 of the Loan and Security Agreement defines "Accounts" as "to any Person, all of such Person's then owned or existing and future acquired or arising (a) 'accounts', as such terms is defined in the Uniform Commercial Code, and any and all other receivables (whether or not specifically listed on schedules furnished to Agent), including, without limitation, all accounts created by, or arising from, all of Borrower's sales, leases, rentals or other dispositions of goods or renditions of services to its customers (whether or not they have been earned by performance), including but not limited to, those accounts arising from sales, leases, rentals or other dispositions of goods or rendition of services made under any of the trade names, logos or styles of Borrower, or through any division of Borrower; (b) Instruments, Documents, Chattel Paper, Contracts, Contract Rights, acceptances, and tax refunds relating to any of the foregoing or arising therefrom; (c) unpaid seller's rights (including rescission,

receivable, including those involved in this litigation[3]. Wells Fargo subsequently purchased Wachovia (Wachovia and Wells Fargo collectively referred to herein as the "Bank").

9.  On March 3, 2009, ImagePoint filed Chapter 7 Involuntary Petition with the United States Bankruptcy Court for the Easter District of Tennessee (the "Bankruptcy Court"). Pursuant to 11 U.S.C. § 362(a), an automatic stay went into effect.

10. On September 3, 2010, the Bank entered into an Assignment, Amendment And Settlement Agreement with James A. Haslam III, attached hereto as Exhibit 4, where the Bank assigned to Haslam all rights, titles and interests existing under the Loan and Security Agreement, including, the Bank's rights and interest in the accounts receivable based on goods and services provided under the Procurement Agreement.[4]

11. On April 8, 2011, Haslam entered into an Assignment with James R. Martin, attached hereto as Exhibit 5, where Haslam assigned to Mr. Martin all rights, titles and interests

---

replevin, reclamation, repossession and stoppage in transit) relating to any of the foregoing or arising therefrom; (d) rights to any Goods relating to any of the foregoing or arising therefrom, including rights to returned, reclaimed or repossessed Goods; (e) reserves and credit balances relating to any of the foregoing or arising therefrom; (f) Supporting Obligations and Letter of Credit Rights relating to any of the foregoing or arising therefrom; (g) insurance policies or rights relating to any of the foregoing; (h) General Intangibles relating to any of the foregoing or arising therefrom including, without limitation, all payment intangibles and other rights to payment (including, but not limited to, those arising in connection with bank and non-bank credit card receivables) and books and records and any electronic media and software relating thereto; (i) notes, deposits or property of Account Debtors relating to any of the foregoing or arising therefrom securing the obligations of any such Account Debtors to the Borrower; (j) healthcare insurance receivables; and (k) cash and non-cash Proceeds of any and all the foregoing."

[3] Section 7.2 of the Loan and Security Agreement, entitled "Security Interest," states: "To secure the payment, observance and performance of the Secured Obligations, [ImagePoint] hereby mortgages, pledges and assigns all of the Collateral of [ImagePoint] to [Wachovia], for the benefit of itself as Agent and the Lenders, and grants to the Agent, for the benefit of itself as Agent and the Lenders, a continuing first priority security interest in, and a continuing Lien upon, the Collateral."

[4] Section 3(a) of the Assignment, Amendment And Settlement Agreement, entitled "Assignment and Assumption," states: "Subject to the terms and conditions of this Agreement, Existing Lender hereby sells, transfers and assigns to Haslam, and Haslam hereby purchases, assumes undertakes from Existing Lender, without recourse and without representation or warranty of any kind (except as provided in this Agreement), all right, title and interest of Existing Lender in and to, and all obligations of Existing Lender under, the Loan Agreement and the other Loan Documents."

3

existing under the Loan and Security Agreement, including Haslam's rights and interests in the accounts receivable based on goods and services provided under the Procurement Agreement.[5]

12. On January 28, 2012, Mr. Martin entered into a Settlement Agreement with David H. Jones and Frantz, McConnell & Seymour, LLP (attorneys for David H. Jones, the Chapter 7 trustee) (the "Settlement Agreement"), attached hereto as Exhibit 6, where it was stated that, upon approval by the Bankruptcy Court of the Settlement Agreement, Mr. Martin may collect "all collateral securing his claim, which Martin as officer of the Debtor and as Agent under the Loan Agreement identifies in the Schedule A attached hereto as a complete list of all collateral of which Martin is presently aware..." Schedule A of the Settlement Agreement specifically includes *Jones, Trustee vs. JP Morgan Chase*, Adv. Proc. No. 09-3071, which was the adversary proceeding in the Bankruptcy Court against JP Morgan Chase in regard to JP Morgan's failure to pay ImagePoint pursuant to the Procurement Agreement.

13. On January 31, 2012, Mr. Martin, along with David H. Jones and Frantz, McConnell & Seymour, LLP filed a Joint Motion For Approval Of Settlement Agreement Among David H. Jones, Trustee, Frantz, McConnell & Seymour, LLP, And James R. Martin with the Bankruptcy Court.

14. On February 14, 2012, the Bankruptcy Court entered an order granting the Joint Motion, attached hereto as Exhibit 7, and thus allowing Mr. Martin, as the secured creditor of ImagePoint, to collect the payment due to ImagePoint by JP Morgan Chase under the Procurement Agreement. JP Morgan Chase approved the form of order for entry.

---

[5] Section 3 of Assignment, entitled "Assignment and Assumption," states: "Subject to the terms and conditions of this Agreement, Existing Lender hereby sells, transfers and assigns to Martin, and Martin hereby purchases, assumes undertakes from Existing Lender, without recourse and without representation or warranty of any kind (except as provided in this Agreement), all right, title and interest of Existing Lender in and to, and all obligations of Existing Lender under, the Loan Agreement, the other Loan Document and the Original Assignment."

4

15. On March 2, 2012, the Bankruptcy Court entered the Agreed Order Granting Second Motion Of James R. Martin For Relief From Stay, attached hereto as Exhibit 8, where "[t]he automatic stay enacted by 11 U.S.C. 362(a) [was] modified to permit James R. Martin to enforce his rights as a secured creditor under the Loan and Security Agreement, dated October 3, 2003, between ImagePoint, Inc. and Wachovia Bank, National Association." JP Morgan Chase, once again, approved the form of order for entry.

16. Indeed, during the July 20, 2012 telephonic hearing on JP Morgan Chases' motion to dismiss the adversary *ImagePoint, Inc., by James R. Martin v. JPMorgan Chase Bank*, Case No. 09-3071 (Bankr. E. D. Tenn.) (the "Adversary Proceeding") (transcript of the hearing attached hereto as Exhibit 9 ("MTD Hearing")), based on facts identical to this litigation, the Bankruptcy Court stated that "the motion for substitution of counsel and plaintiff recited that the loan and security agreement dated as of October 3, 2003 between ImagePoint, Inc. and Wachovia and assigned to James R. Martin, permits lawsuits to collect receivables to be brought in the name of ImagePoint, Inc." MTD Hearing at 7. Moreover, in making its ruling, the Bankruptcy Court relied on the argument that "the Trustee consented to Mr. Martin pursuing this action in the name of the debtor." *Id.* at 8. The Bankruptcy Court further stated:

> The basis for JP Morgan's assertion that subject matter jurisdiction no longer exists is the fact that Mr. Martin has been granted stay relief and the unlikelihood that the action will produce any benefit for unsecured creditors. This argument is similar to the point made by Mr. Martin in his response to the standing question that this is no longer a 542(b) action now that Mr. Martin has been granted stay relief and is pursuing the claim to collect on his collateral.
>
> As previously addressed in the Court's standing discussion, to the extent that this is a 542(b) turnover action, the Court has subject matter jurisdiction, but Mr. Martin has no standing. However, to the extent that this is no longer a turnover action and merely an effort to collect on his collateral, Mr. Martin undeniably has standing, but this Court has no subject matter jurisdiction. At this point, the action becomes a lawsuit between two non-debtor parties to collect a state law claim. This Court only has related-to jurisdiction over these suits, to the extent that the

outcome could conceivably have any effect on the estate being administered in bankruptcy.

*Id.* at 16-17.

17. On August 2, 2012, the Bankruptcy Court entered an order granting JP Morgan Chase's motion to dismiss, attached hereto as Exhibit 10, on the basis that, as indicated during the July 20, 2012 hearing, Mr. Martin lacked standing under 11 U.S.C. § 542(b), as only "the Trustee has independent standing to pursue a Section 542 turnover action" (MTD Hearing at 11), and, to the extent the Adversary Proceeding was "merely an accounts receivable collection effort by a secured creditor," the Bankruptcy Court had no subject matter jurisdiction under bankruptcy law as Mr. Martin was "acting to collect on his collateral" (MTD Hearing at 15).

### COUNT ONE

18. Plaintiffs reallege paragraphs 1 through 17 above as if fully set forth herein.

19. New York Uniform Commercial Code § 9-102(72) defines a "secured party" as "a person in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secured is outstanding."

20. New York Uniform Commercial Code § 9-607(a)(1) states that "in any event after default, a secured party…may notify an account debtor or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party."

21. Moreover, New York Uniform Commercial Code § 9-607(c) states:

> (c) Commercially reasonable collection and enforcement. A secured party shall proceed in a commercially reasonable manner if the secured party:
> (1) undertakes to collect from or enforce an obligation of an account debtor or other person obligated on collateral; and
> (2) is entitled to charge back uncollected collateral or otherwise to full or limited recourse against the debtor or a secondary obligor.

22. As set forth above, Mr. Martin is a secured party as he owns the security interest provided in the Loan and Security Agreement including ImagePoint's accounts receivable.

23. Pursuant to New York Uniform Commercial Code § 9-607(a)(1), Mr. Martin is foreclosing on the security interest (*i.e.* the collateral) under the Loan and Security Agreement, specifically ImagePoint's accounts receivable, by collecting the amount due from JP Morgan Chase, "the other person obligated on collateral," under the Procurement Agreement.

24. Moreover, pursuant to New York Uniform Commercial Code § 9-607(c), Mr. Martin is proceeding "in a commercially reasonable manner" as he has made demands on JP Morgan Chase for payment of the amounts due under the Procurement Agreement. JP Morgan Chase has ignored the demands. Mr. Martin also attempted to collect the amount due from JP Morgan Chase in the Bankruptcy Court. The Bankruptcy Court dismissed that proceeding on jurisdictional grounds. Mr. Martin then commenced this lawsuit in this District pursuant to the forum selection clause in the Procurement Agreement. If there is any surplus recovery in this action beyond the amounts included in Mr. Martin's security interest, he will pay those amounts over to the Chapter 7 trustee for the Bankruptcy estate.

## COUNT TWO

25. Plaintiffs reallege paragraphs 1 through 17 above as if fully set forth herein.

26. JP Morgan Chase is liable to Plaintiffs for breach of contract.

## COUNT THREE

27. Plaintiffs reallege paragraphs 1 through 17 above as if fully set forth herein.

28. As an alternative to the claim for breach of contract, Plaintiffs claim that JP Morgan Chase has been unjustly enriched and that JP Morgan Chase is liable to Plaintiffs for the reasonable value of the work and labor performed and material provided.

WHEREFORE, AND FOR ALL OF WHICH, Plaintiffs assert that they are entitled to a judgment against the JP Morgan Chase in the amount of $762,287.92 plus pre-judgment interest and attorney's fees.

Respectfully submitted this 29th day of July, 2013.

Shujah A. Awan
Joe R. Whatley, Jr.
WHATLEY KALLAS, LLP
380 Madison Avenue, 23rd Floor
New York, NY 10017
(212) 447-7060
sawan@whatleykallas.com
jwhatley@whatleykallas.com

## CERTIFICATE OF SERVICE

I, Shujah A. Awan, hereby certify that on July 29, 2013, I filed the foregoing with the Clerk of Court and served a true and correct copy via U.S. Mail, postage prepaid, on the following counsel:

William M. Hawkins, Esq.
LOEB & LOEB, LLP
345 Park Avenue
New York, NY 10154

*Attorney for Defendant JP Morgan Chase Bank, National Association*

Shujah A. Awan